1   VERSO LAW GROUP LLP
    GREGORY S. GILCHRIST (State Bar No. 111536)
2   RYAN BRICKER (State Bar No. 269100)
    PAYMANEH PARHAMI (State Bar No. 335604)
3   209 Kearny Street, Third Floor
    San Francisco, California 94108
4   Telephone:      (415) 534-0495
    Facsimile:      (270) 518-5974
5   Email:      greg.gilchrist@versolaw.com
                 ryan.bricker@versolaw.com
6                paymaneh.parhami@versolaw.com

7   Attorneys for Plaintiff
    PATAGONIA, INC.
8

9                    UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  PATAGONIA, INC.,                    Case No. 22-07437

13              Plaintiff,              **COMPLAINT FOR TRADEMARK
                                        INFRINGEMENT, TRADE DRESS
14       v.                             INFRINGEMENT, FALSE
                                        DESIGNATION OF ORIGIN, AND
15  THE GAP, INC.,                      DILUTION**

16              Defendant.
                                        **JURY TRIAL DEMAND**
17

18

19       This lawsuit is necessary to stop The Gap, Inc. ("Gap") from infringing, misusing, and

20  trading on Patagonia, Inc.'s famous trademarks and trade dress.

21       Patagonia introduced its Snap-T® pullover fleece in 1985 as the first technical fleece

22  product that was as warm as wool insulation but was lighter and dried faster.  Four years later, in

23  1989 Patagonia added the snapped flap pocket to the Snap-T design, and an iconic design was

24  born.  In the 33 years since its debut, the Snap-T has become an immediately recognizable

25  Patagonia design including the yoke, contrasting pocket and piping trims.  Patagonia regularly has

26  advertised the design for decades, including a substantial campaign in 2015 as well as featuring

27  the Snap-T in a current season campaign in an ode to its 1985 origins.  The Snap-T design is

28  widely recognized as iconic – it was included in a New York Museum of Modern Art exhibit

entitled "Items: Is Fashion Modern?" with the following description "the distinctive patch pocket associated with today's fleece outerwear was originally a work-around" and the Snap-T's "bright color palette took fleece out of the woods and onto the street." The design also was included in the inaugural exhibition, 'Values of Design,' in the Victoria & Albert Gallery.

The design has won awards and acclaim, including in dozens of high-profiled magazines and media outlets, including Vogue, ELLE, GQ, Men's Health, Shape, InStyle, Business Insider, Conde Nast Traveler, NY Magazine. Patagonia has sold its well-known Snap-T product continuously to the present day. Above the breast pocket, Patagonia places its famous P-6 logo, a rectangular label with a mountain silhouette and sky. The designs, over the years, look like this:





| 1989 | 1993 |




| 1997 | 2008 |




2016                                    2022

Gap is selling copies of this design using a highly similar rectangular logo, all designed to make it appear as though Patagonia is the source of Gap's products or has collaborated with Gap or authorized use of its trademark and trade dress.  Gap's look-a-like products look like this:




Close ups comparing the pocket and logo designs highlight the similarities, in design, coloration, and placement:




As one Gap customer aptly stated in a one-star product review:

★ ☆ ☆ ☆ ☆

## Obvious Pata*gonia ripoff

JillyL,  8 days ago

I had to zoom in just to ensure that the logo was GAP. This is wild, why are you copying other brands, you have your own lane.

More Detail ⌄

Not all consumers will "zoom in," either at point of sale or post-sale.  And even if consumers do zoom in, they are likely to believe this is one of Gap's many collaborations.  To prevent further damage to Patagonia, and its brand, logo and trade dress, Patagonia alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Patagonia, Inc. ("Patagonia") is a California corporation headquartered at 259 West Santa Clara Street, Ventura, California 93001.  Patagonia has been designing, developing, marketing, and selling outdoor apparel, accessories, and active sportswear for nearly fifty years.  Patagonia's PATAGONIA brand and P-6 logo are famous in the United States and around the world, and instantly recognized by consumers as a symbol of innovative apparel designs, quality products, and environmental and corporate responsibility.

2.      Gap is a Delaware corporation with its principal place of business at Two Folsom Street, San Francisco, California 94105

3.      Gap offers, promotes, and sells products that infringe Patagonia's intellectual property rights through a variety of channels throughout the country, including in its vast number of retail stores and online through its website.  These sales occur throughout this judicial district.

4.      Patagonia's trademark and trade dress infringement, false designation of origin, and dilution claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006 (15 U.S.C. §§ 1051, *et seq.*).  This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition) and 15 U.S.C. § 1121 (Lanham Act).  This Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction) and 28 U.S.C. § 1332 (diversity).

5.      This Court has personal jurisdiction over Gap because Gap conducts and operates a very large business in this district and purposefully has availed itself of the privilege of doing business here.  Gap retails, sells, ships, advertises and promotes its infringing products to

COMPLAINT
CASE NO. 22-07437

1    customers in this district.

2        6.      Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1400(a) because Gap

3    infringes Patagonia's intellectual property in this district and a substantial part of the events giving

4    rise to the claims asserted arose in this district.

5              **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

6    **Patagonia's History**

7        7.      Patagonia was founded in the late 1960s to design and sell climbing clothes and

8    other active sportswear.  The company adopted the brand "PATAGONIA" to differentiate a

9    related business that designed and manufactured climbing gear and tools.  PATAGONIA was

10   chosen as the trademark to call to mind romantic visions of glaciers tumbling into fjords, jagged

11   windswept peaks, gauchos, and condors.  Since at least 1973, the PATAGONIA brand also is

12   identified by a distinctive rendering of a silhouetted mountain skyline (the "P-6 logo").

13       8.      In the nearly-fifty years since Patagonia's business started, the PATAGONIA brand

14   and its P-6 logo have become among the most identifiable brands in the world.  Patagonia's

15   products now include a wide range of apparel products and equipment, including technical

16   products designed for climbing, skiing and snowboarding, surfing, fly fishing, and trail running, as

17   well as sportswear, which are sold around the world.

18       9.      Over the years, Patagonia has been recognized and honored for its business

19   initiatives, including receiving the Sustainable Business Counsel's first "Lifetime Achievement

20   Award."  In 1996, with an increased awareness of the dangers of pesticide use and synthetic

21   fertilizers used in conventional cotton growing, Patagonia began the exclusive use of organically

22   grown cotton and has continued that use for more than twenty years.  It was a founding member of

23   the Fair Labor Association®, which is an independent multi-stakeholder verification and training

24   organization that audits apparel factories.  Additionally, since 1985 Patagonia has pledged 1% of

25   sales to environmental groups to preserve and restore our natural environment, donating more than

26   $100 million to date.  In 2002, Patagonia's founder, Yvon Chouinard, along with others, created a

27   non-profit called 1% For the Planet® to encourage other businesses to do the same.  Today, more

28   than 1,200 member companies have donated more than $150 million to more than 3,300

nonprofits through 1% For the Planet.  In 2012, Patagonia became one of California's first registered Benefit Corporations, ensuring Patagonia could codify into its corporate charter consideration of its workers, community, and the environment.  In 2016, Patagonia pledged to donate all revenue from sales on Black Friday, donating $10 million to environmental grantees in response to customers' purchases on that day.  In 2018, Patagonia pledged an additional $10 million in grants to environmental groups in response to recent tax cuts given to businesses.  Over the course of two weeks in December 2019, Patagonia matched another $10 million in donations to environmental and other grassroots organizations.  Patagonia's owners recently donated their holdings in the company to support initiatives and innovations addressing climate change.

**Patagonia's Trademarks**

10.    Patagonia owns numerous registrations for its distinctive P-6 logo and PATAGONIA trademark, covering a wide-ranging assortment of products.  Among these are the following U.S. trademark registrations:

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 1189402 / Feb. 9, 1982 | Men's and Women's Clothing-Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods and Rainwear. | 08/1974 |
| | 1294523 / Sept. 11, 1984 | Men's, Women's and Children's Clothing-Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts and Belts | 08/1974-1981 |
| | 1547469 / July 11, 1989 | Men's, Women's and Children's Clothing - Namely, Jackets, Pants, Shirts, Sweaters, Vests, Skirts, Underwear Tops and Bottoms, Socks, Gloves, Mittens, Hats, Face Masks, Balaclava, Gaiters, Suspenders, and Belts | 08/1974-1981 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| | 1775623 / June 8, 1993 | Luggage back packs, and all-purpose sports bags | 08/1988 |
| **PATAGONIA** | 1811334 / Dec. 14, 1993 | Luggage, back packs, fanny packs and all-purpose sport bags, footwear, ski bags and ski gloves | 08/1990 |
| **PATAGONIA** | 2260188 / July 13, 1999 | Computerized on-line ordering activities in the field of clothing and accessories; Providing information in the field of technical clothing and accessories for use in recreational, sporting and leisure activities; providing information in the field of existing and evolving environmental issues | 10/1995 |
| **PATAGONIA.COM** | 2392685 / Oct. 10, 2000 | On-line retail store and mail order services featuring technical clothing, footwear, and accessories; Computer services in the nature of on-line information related to the environment and clothing | 10/1995 |
| **PATAGONIA** | 2662619 / Dec. 17, 2002 | Retail store services featuring clothing, footwear, luggage and a wide variety of sporting goods and accessories | 06/1986 |
| **PATAGONIA** | 5491401 / June 12, 2018 | Reusable bottles sold empty; insulated containers for food or beverage for domestic use; cups, mugs and growlers | 09/2014 |
| **PATAGONIA** | 5561006 / Sept. 11, 2018 | Stickers; paper banners; fiction and non-fiction books on a variety of topics; posters; non-magnetically encoded gift cards; photographs | 12/1991 |

These registrations for the PATAGONIA mark and logos are in full force and effect. The registrations have become incontestable under 15 U.S.C. § 1065. A color image of the P-6 logo follows:

1
2
3
4
5



6    11.    The PATAGONIA trademarks are distinctive, arbitrary and fanciful, entitled to the

7    broadest scope of protection, and certain of the PATAGONIA trademarks are registered

8    worldwide.

9    12.    For many years prior to the events giving rise to this Complaint and continuing to the

10   present, Patagonia annually has spent enormous amounts of time, money, and effort advertising and

11   promoting the products on which its PATAGONIA trademarks are used.  PATAGONIA brand

12   products are advertised in a variety of contexts and media, including in print and on the Internet.  In

13   addition to advertising by Patagonia, the PATAGONIA trademarks are also advertised and

14   promoted and presented at point of sale by numerous retailers.  Consumers, accordingly, are

15   exposed to the PATAGONIA trademarks in a wide range of shopping and post-sale contexts.

16   13.    Among the products that Patagonia is well-known for is its Snap-T product.  This

17   product was part of an initiative of Patagonia's founder to address issues with wool and other

18   natural fabrics that did not perform well for certain activities or in certain weather.  The company

19   developed fibers known as Synchilla® which are now produced from discarded plastic bottles and

20   are used in the Snap-T products.  The design of the Snap-T consists of Patagonia's well-known

21   trade dress ("trade dress") that consists of a snap placket and matching pocket flap, rendered in

22   contrasting color from the fleece and in different fabrication. Piping is used on the collar, cuffs and

23   waist and is often rendered in a contrasting color.  The rectangular P-6 logo is placed above the

24   pocket flap.

25   14.    Collectively, Patagonia's registered trademarks, trade dress, and its common law

26   marks are referred to as the "PATAGONIA trademarks."  Patagonia also owns a registered

27   copyright (Registration No. VA 1-801-788) for the P-6 logo.

28   / / /

15.     Patagonia has sold its PATAGONIA brand products all over the world, including throughout the United States and California.  Through its promotion and investment in its brand and extensive sales, publicity, awards, and leadership in sustainable sourcing practices, Patagonia has acquired enormous goodwill in its PATAGONIA trademarks.  The PATAGONIA trademarks, including the P-6 logo are famous within the meaning of the Trademark Dilution Revision Act, enjoy strong consumer recognition, and are recognized around the world and throughout the United States by consumers as signifying high quality products made by a responsible company.

**Gap's Infringement of Patagonia's Rights and Breach of the Parties' Settlement Agreement**

16.     Without authorization from Patagonia, Gap has promoted, offered for sale, and sold fleece jackets using designs and logos that imitate the PATAGONIA trademarks.

17.     Gap's infringing jackets ("Gap Infringements") are available in men's and kids' sizes and can be viewed at the following links:

https://www.gap.com/browse/product.do?pid=479514032&vid=1?#pdp-page-content

https://www.gap.com/browse/product.do?pid=485811002&rrec=true&mlink=5050,12413545,PD P_gapproduct2_rr_1&clink=12413545#pdp-page-content and

https://www.gap.com/browse/product.do?pid=486825002&rrec=true&mlink=5050,12413545,PD P_gapproduct2_rr_3&clink=12413545#pdp-page-content

18.     The Gap Infringements mimic all elements of the Snap-T trade dress and use a rectangular logo that, particularly in the context of the infringing trade dress, is likely to cause confusion among consumers about the source of the products or whether they are the result of a sponsorship by or collaboration with Patagonia.

19.     Gap began using the Gap Infringements long after the P-6 logo became famous. The Gap Infringements have caused or are likely to cause dilution of Patagonia's famous and distinctive mark by diminishing its distinctiveness and singular association with Patagonia.

20.     Patagonia is informed and believes that Gap has marketed and sold substantial quantities of products bearing the Gap Infringements and has profited and continues to profit from such sales.  Given how derivative the Gap Infringements are of Patagonia's original designs and logo, there is no question that Gap's copying has been willful and deliberate.  Patagonia also

COMPLAINT
CASE NO. 22-07437

- 9 -

warned Gap in prior years to stop copying its products, trade dress and logos, including designs that infringed Patagonia's Snap-T trade dress.  Its adoption of designs and logos bearing even more similarity cannot have occurred by accident.

21.     Gap's actions have caused damages to Patagonia but also has caused Patagonia to suffer irreparable harm for which money damages and other remedies are inadequate.  Unless Gap is restrained by this Court, it will continue its illegal activities and otherwise continue to cause irreparable damage and injury to Patagonia by, among other things:

a.     Depriving Patagonia of its statutory rights to use and control use of its PATAGONIA trademarks;

b.     Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the infringing products;

c.     Causing the public falsely to associate Patagonia with Gap or its products;

d.     Causing the public falsely to believe Patagonia has collaborated, co-branded, or is otherwise associated with Gap;

e.     Causing incalculable and irreparable damage to Patagonia's goodwill and diluting the capacity of its famous PATAGONIA trademarks to differentiate its products from those of its competitors and damaging Patagonia's reputation;

f.     Causing irreparable damage to Patagonia's licensing and collaboration programs, and to Patagonia's ability to control its brand partnerships and to associate itself with entities who are specifically aligned to Patagonia's company mission; and

g.     Causing Patagonia to lose sales of its genuine PATAGONIA products.

22.     Accordingly, in addition to other relief, Patagonia is entitled to injunctive relief against Gap.

/ / /

/ / /

/ / /

COMPLAINT
CASE NO. 22-07437

## FIRST CLAIM

## FEDERAL TRADEMARK INFRINGEMENT

### (15 U.S.C. §§ 1114-1117)

23.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 22 of this Complaint.

24.     Gap has used, in connection with the sale, offering for sale, distribution, or advertising of its products bearing the Gap Infringements, trade dress and logos that infringe upon Patagonia's PATAGONIA trademarks.

25.     Gap's acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.  Gap's willfulness is displayed not only in the near identity of the infringements, but in its disregard of prior warnings regarding its use of other designs.

26.     As a result of Gap's conduct, Patagonia is entitled to recover up to treble the amount of Gap's unlawful profits and Patagonia's damages and an award of attorneys' fees under 15 U.S.C. § 1117(a).

27.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Gap to stop use of the Gap Infringements, and any other mark or design similar to the PATAGONIA trademarks.

## SECOND CLAIM

## FEDERAL UNFAIR COMPETITION

### (False Designation of Origin and False Description – 15 U.S.C. § 1125(a))

28.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 27 of this Complaint.

29.     Gap's conduct constitutes the use of trade dress and symbols or devices tending falsely to describe the Gap Infringements within the meaning of 15 U.S.C. § 1125(a)(1).  Gap's Infringements are likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of the infringing products to the detriment of Patagonia and in violation of 15 U.S.C. § 1125(a)(1).

30.     As a result of Gap's conduct, Patagonia is entitled to recover up to treble the amount of Gap's unlawful profits and Patagonia's damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

31.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Gap to stop use of the Gap Infringements, and any other mark or design similar to the PATAGONIA trademarks.

**THIRD CLAIM**

**FEDERAL DILUTION OF FAMOUS MARK**

**(Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c))**

32.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 31 of this Complaint.

33.     Patagonia's PATAGONIA trademarks (including the P-6 logo) are distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and were famous prior to Gap's adoption of the copycat Gap Infringements.

34.     Gap's conduct is likely to cause dilution of Patagonia's PATAGONIA trademarks by diminishing its distinctiveness and damaging the reputation of Patagonia's PATAGONIA trademarks in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

35.     Because Gap's conduct causing the likely dilution was willful, Patagonia is entitled to recover up to treble the amount of Gap's unlawful profits and Patagonia's damages, and an award of attorney's fees under 15 U.S.C. §§ 1116(a), 1117(a), and 1125(c).

36.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires Gap to stop use of the Gap Infringements, and any other mark or design similar to the PATAGONIA trademarks.

/ / /

/ / /

/ / /

**FOURTH CLAIM**

**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

**UNDER CALIFORNIA STATUTORY LAW**

**(Cal. Bus. & Prof. Code §§ 14200 *et seq*.; Cal. Bus. & Prof. Code § 17200 *et seq*.)**

37.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 36 of this Complaint.

38.     Patagonia is the owner of numerous registrations for the PATAGONIA trademarks, as well as common law rights in those marks.

39.     Without the consent of Patagonia, Gap is using a design and logo that infringe upon Patagonia's PATAGONIA trademarks in connection with the sale, offering for sale, distribution, or advertising of its products bearing the Gap Infringements.

40.     Gap's infringement of Patagonia's PATAGONIA trademarks is likely to cause confusion, mistake, and deception as to the source of the origin of Gap's offerings.

41.     Gap uses the Gap Infringements to enhance the commercial value of its offerings.

42.     Gap's acts violate Patagonia's trademark rights under California Business & Professions Code §§14245 *et seq*.

43.     Gap's conduct as alleged in this Complaint also constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code §§ 17200 *et seq*.

44.     Patagonia is entitled to monetary damages and injunctive relief prohibiting Gap from using the Gap Infringements, or any other mark or design that is likely to be confused with the PATAGONIA trademarks.

45.     Without injunctive relief, Patagonia has no means by which to control the continuing injury to its reputation and goodwill or that of its PATAGONIA trademarks.  Patagonia has been and will continue to be irreparably harmed.  No amount of money damages can adequately compensate Patagonia if it loses the ability to control its marks.

46.     Because Gap's actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to treble the amount of Gap's unlawful profits and Patagonia's

1  damages under California Business & Professions Code § 14250.

2  **FIFTH CLAIM**

3  **TRADEMARK DILUTION UNDER CALIFORNIA LAW**

4  **(Cal. Bus. & Prof. Code § 14247)**

5  47.    Patagonia realleges and incorporates by reference each of the allegations contained

6  in paragraphs 1 through 46 of this Complaint.

7  48.    Patagonia owns valid and protectable rights in its PATAGONIA trademarks

8  (including the P-6 logo).

9  49.    The PATAGONIA trademarks including the P-6 are registered in the state of

10  California and are distinctive and famous within the meaning of the California Model State

11  Trademark Law, Cal. Bus. & Prof. Code § 14247.  The P-6 logo was famous prior to Gap's

12  adoption of the Gap Infringements.

13  50.    Gap's acts are likely to dilute the distinctive quality of the PATAGONIA

14  trademarks.  Gap's acts therefore constitute trademark dilution under California Business &

15  Professions Code **§** 14247, the analogous statutes of other states, and under California common

16  law.

17  51.    Patagonia is entitled to monetary damages and injunctive relief prohibiting Gap

18  from using the Gap Infringements, and any other mark or design similar to the PATAGONIA

19  trademarks.  Without injunctive relief, Patagonia has no means by which to control the continuing

20  dilution of the PATAGONIA trademarks.  Patagonia has been and will continue to be irreparably

21  harmed.  No amount of money damages can adequately compensate Patagonia for such harm.

22  52.    Because Gap's actions have been committed willfully, maliciously, and

23  intentionally, Patagonia is entitled to treble the amount of Gap's unlawful profits and Patagonia's

24  damages under California Business & Professions Code § 14250.

25  **SIXTH CLAIM**

26  **TRADEMARK INFRINGEMENT UNDER CALIFORNIA COMMON LAW**

27  53.    Patagonia realleges and incorporates by reference each of the allegations contained

28  in paragraphs 1 through 52 of this Complaint.

54.     Patagonia owns valid and protectable rights in its PATAGONIA trademarks at common law.

55.     Gap's conduct is likely to cause confusion, to cause mistake, or to deceive as to the source of goods offered by Gap, or as to affiliation, connection, association, sponsorship, or approval of such goods and services, and constitutes infringement of Patagonia's PATAGONIA trademarks at common law.

56.     Gap infringed Patagonia's PATAGONIA trademarks with knowledge and intent to cause confusion, mistake, or deception.

57.     As a direct and proximate result of Gap's activities, Patagonia has suffered substantial damage.

58.     Patagonia is entitled to monetary damages and Gap's conduct is aggravated by that kind of willfulness, wantonness, malice, and conscious indifference to the rights and welfare of Patagonia for which California law allows the imposition of exemplary damages.

59.     Unless restrained and enjoined, the conduct of Gap will further impair the value of the PATAGONIA trademarks and Patagonia's business reputation and goodwill.  Patagonia has no adequate remedy at law.

60.     Patagonia is therefore entitled to injunctive relief prohibiting Gap from using the Gap Infringements, and any other mark or design similar to the PATAGONIA trademarks.

61.     Without injunctive relief, Patagonia has no means by which to control the continuing injury to their reputation and goodwill or that of its PATAGONIA trademarks. Patagonia has been and will continue to be irreparably harmed.  No amount of money damages can adequately compensate Patagonia if it loses the ability to control its marks.

62.     Because Gap's actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to recover reasonable attorneys' fees and compensatory and punitive damages.

/ / /

/ / /

/ / /

**PRAYER FOR JUDGMENT**

WHEREFORE, Patagonia prays that this Court grant it the following relief:

1.      Adjudge that the PATAGONIA trademarks have been infringed by Gap in violation of Patagonia's rights under 15 U.S.C. § 1114;

2.      Adjudge that the PATAGONIA trademarks have been infringed by Gap in violation of California statutory law;

3.      Adjudge that Patagonia's common law rights in the PATAGONIA trademarks have been infringed;

4.      Adjudge that Gap has falsely designated the origin or sponsorship of its products in violation of Patagonia's rights under 15 U.S.C. § 1125(a);

5.      Adjudge that Gap has competed unfairly with Patagonia in violation of California statutory law;

6.      Adjudge that Gap's activities are likely to dilute Patagonia's famous PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1125(c) and/or California law;

7.      Adjudge that Gap and its agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with it, and/or any person(s) acting for, with, by, through or under it, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

a.      Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble the PATAGONIA trademarks as to be likely to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for Patagonia, including, without limitation, any product that bears the Gap Infringements, or any other approximation of Patagonia's trademarks;

b.      Using any word, term, name, symbol, device, or combination that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Gap or its products with Patagonia, or as to the origin of Gap's goods, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising, or

1    likely dilution of the PATAGONIA trademark;

2        c.    Further infringing the rights of Patagonia in and to its PATAGONIA

3    trademarks, or otherwise damaging Patagonia's goodwill or business reputation;

4        d.    Further diluting the famous PATAGONIA trademarks;

5        e.    Otherwise competing unfairly with Patagonia in any manner; and

6        f.    Continuing to perform in any manner whatsoever any of the other acts

7    described in this Complaint;

8        8.    Adjudge that Gap is prohibited from applying to register any other trademark or

9    service mark which is likely to be confused with, or that dilutes the distinctive quality of,

10    Patagonia's PATAGONIA trademarks;

11        9.    Adjudge that Gap be required immediately to deliver to Patagonia's counsel its

12    entire inventory of infringing products, including without limitation, patches and any other

13    products, packaging, labeling, advertising and promotional material, and all plates, patterns,

14    molds, matrices, files, data, and other material for producing or printing such items, that are in its

15    possession or subject to its control and that infringe Patagonia's trademarks as alleged in this

16    Complaint;

17        10.    Adjudge that Gap, within thirty (30) days after service of the Court's judgment, be

18    required to file with this Court and serve upon Patagonia's counsel a written report under oath

19    setting forth in detail the manner in which it has complied with the judgment;

20        11.    Adjudge that Patagonia recover from Gap its damages and lost profits, and Gap's

21    profits in an amount to be proven at trial;

22        12.    Adjudge that Gap be required to account for any profits that are attributable to its

23    illegal acts, and that Patagonia be awarded (1) Gap's profits and (2) all damages sustained by

24    Patagonia, under 15 U.S.C. § 1117, plus prejudgment interest;

25        13.    Adjudge that the amounts awarded to Patagonia pursuant to 15 U.S.C. § 1117 shall

26    be trebled;

27        14.    Order an accounting of and impose a constructive trust on all of Gap's funds and

28    assets that arise out of its infringing, dilutive, and/or breaching activities;

COMPLAINT
CASE NO. 22-07437                                                                    - 17 -

15.     Adjudge that Patagonia be awarded its costs and disbursements incurred in connection with this action, including Patagonia's reasonable attorneys' fees and investigative expenses; and

16.     Adjudge that all such other relief be awarded to Patagonia as this Court deems just and proper.

DATED:  November 22, 2022          Respectfully submitted,

                                   VERSO LAW GROUP LLP


                                   By:    /s/Gregory S. Gilchrist
                                          GREGORY S. GILCHRIST
                                          RYAN BRICKER
                                          PAYMANEH PARHAMI

                                   Attorneys for Plaintiff
                                   PATAGONIA, INC.

1    **<u>DEMAND FOR JURY TRIAL</u>**

2    Patagonia, Inc. demands that this action be tried to a jury.

3    DATED:  November 22, 2022          Respectfully submitted,

4                                      VERSO LAW GROUP LLP

5

6                                      By:   */s/Gregory S. Gilchrist*
                                             _____
7                                            GREGORY S. GILCHRIST
                                             RYAN BRICKER
8                                            PAYMANEH PARHAMI

9                                      Attorneys for Plaintiff
                                       PATAGONIA, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28